UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 13-62742-CIV-ALTONAGA

**STRIPTEASER, INC.**,

    Plaintiff,
v.

**STRIKE POINT TACKE, LLC**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Strike Point Tackle, LLC's ("Strike Point['s]") Motion to Dismiss [ECF No. 14], filed February 3, 2014. Plaintiff, Stripteaser, Inc. ("Stripteaser") filed its Memorandum of Law in Opposition . . . ("Response") [ECF No. 20] on February 21, 2014; and Defendant filed its Reply . . . [ECF No. 21] on March 3, 2014. The Court has carefully reviewed the parties' written submissions and applicable law.

### I.    BACKGROUND[1]

This case concerns a dispute about a competitor's alleged direct and indirect infringing acts and unfair competition committed in this District. Plaintiff Stripteaser is a Florida corporation with its principal place of business in Miami, Florida, while Defendant Strike Point is a Pennsylvania limited liability company with its principal place of business in Newtown, Pennsylvania. (*See* Compl. ¶¶ 1, 2). The parties manufacture, sell and distribute products that are in direct competition with each other. (*See id.* ¶13). Strike Point has committed copyright infringement in Florida by offering for sale and selling products in the State that infringe Stripteaser's copyright that is the subject of this suit. (*See id.* ¶ 6). Specifically, Strike Point

---

[1] The Court accepts the allegations of the Complaint [ECF No. 1] as true.

promotes through its website www.strikepointtackle.com (the "website") a list of Florida locations where consumers may purchase Strike Point's products that infringe Stripteaser's copyright in Florida. (*See id.* ¶ 7). Exhibit "A" to the Complaint [ECF No. 1–3] is a printout from the website.

Stripteaser designs, manufactures, and sells revolutionary lines of holographic prismatic and reflective teasers and other fishing lure products that include holographic strip fishing lures and dredge kits. (*See id.* ¶ 9). Stripteaser owns and holds U.S. copyright registration number VA 1-865-130 (the "registration") for the Ballyhoo Lure Artwork. (*See id.* ¶ 10). The registration appears as Exhibit "B" to the Complaint [ECF No. 1-4]. Defendant Strike Point similarly manufactures, sells and distributes teasers and fishing lure products including collapsible dredge kits and value bar dredge kits. (*See id.* ¶ 11). But Strike Point, without authorization, has also been selling products containing the Ballyhoo Lure Artwork or ballyhoo fishing lure artwork that is substantially similar to Plaintiff's Ballyhoo Lure Artwork (the "infringing works"). (*See id.*). Furthermore, Strike Point was aware of Stripteaser's Ballyhoo Lure Artwork, so Strike Point's unauthorized copying and use of the Ballyhoo Lure Artwork is willful and intentional. (*See id.* ¶ 12).

On the basis of these factual allegations and supporting exhibits, Stripteaser states three claims for relief. In Count I, titled "Direct Infringement of Copyright," Stripteaser alleges Strike Point directly infringes Stripteaser's copyright rights in and to the Ballyhoo Lure Artwork, and Stripteaser is entitled to actual damages and Strike Point's profits pursuant to 17 U.S.C. section 504(b). (*Id.* ¶¶ 16–18). Further, Stripteaser requests a preliminary and permanent injunction

pursuant to 17 U.S.C. section 502 prohibiting further infringement of Stripteaser's copyrights[2] and exclusive rights under its copyright rights. (*See id.* ¶ 19). Count II, titled "Indirect Infringement of Copyright" alleges indirect infringement of Stripteaser's copyright in the Ballyhoo Lure Artwork, in violation of the Copyright Act, 17 U.S.C. section 106. (*Id.* ¶ 21). Strike Point has knowledge its distributors and retailers are selling its products displaying the infringing works, and it induces the infringement of Stripteaser's copyright rights by its distributors and retailers. (*See id.* ¶ 22). Strike Point is liable as a secondary infringer for each infringing sale of products displaying the infringing works by Strike Point's distributors and retailers. (*See id.* ¶ 26). Stripteaser seeks actual damages as well as profits under 17 U.S.C. section 504(b). (*See id.* ¶ 27). Last, Count III seeks relief for Strike Point's "Unfair Competition Under [the] Florida Deceptive and Unfair Trade Practices Act and Florida Common Law" (the "FDUTPA"). (*Id.* 6).

Strike Point moves to dismiss — with prejudice — all counts for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). Strike Point also seeks attorney's fees for being forced to "expend substantial resources" defending "an action wholly lacking in merit." (Mot. 13). The several arguments made by Strike Point as to each count of the Complaint are addressed below.

## II. STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than

---

[2] As the Complaint discusses only one copyright, and the titles to Counts I and II reference a singular copyright and one registration, to the extent the text in the Complaint sometimes uses the plural "copyrights," the Court assumes this to be a typographical error.

an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

### III. ANALYSIS

#### A. Count I — Direct Infringement

Stripteaser claims direct infringement of its copyright in Count I and also seeks damages against Strike Point under 17 U.S.C. section 504(b). (*See* Compl. 3, ¶¶ 16–18). To state a claim for direct infringement, a plaintiff must allege: (1) it owns a valid copyright, and (2) the defendant copied the constituent elements of the work that are original. *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). In other words, "[w]here a plaintiff shows that he owns a valid copyright and that the other party copied some of the protected elements of that work, he has shown direct infringement of his copyright." *Disney Enters., Inc. v. Hotfile Corp.*, 798 F. Supp. 2d 1303, 1307 (S.D. Fla. 2011) (citing *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011)). Where there is no direct proof of copying, a plaintiff may establish copying by alleging defendant had access to plaintiff's work and the plaintiff's and defendant's

4

works are substantially similar. *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008) (footnote call number and citation omitted).

Strike Point raises several arguments in its effort to defeat the sufficiency of Count I. First, Strike Point asserts Count I fails to state a claim because it fails to identify which of Strike Point's numerous products offered on its website allegedly infringes the Ballyhoo Lure Artwork. (*See* Mot. 5). Strike Point goes on to accuse the pleading of being "facially unclear" as to whether the infringing works include the "teasers" and the "other fishing lure products" — which would encompass all of Strike Pont's fishing lure products — or simply the products containing the Ballyhoo Lure Artwork, in which case the products are not identified at all. (*Id.* 6). This first argument fails to persuade.

Stripteaser clearly alleges it owns a copyright for its Ballyhoo Lure Artwork, copyright registration number VA 1-865-130. (*See* Compl. ¶¶ 10, 15). Stripteaser alleges Strike Point had access to Plaintiff's work and there is substantial similarity between the copyrightable aspects of Plaintiff's copyrighted work and the infringing works. (*See id.* ¶¶ 9, 12). Contrary to Strike Point's position, Stripteaser also alleges Defendant is selling teasers, dredge kits, and value bar dredge kits containing the Ballyhoo Lure Artwork. (*See id.* ¶ 11). Those are the allegedly infringing works. Also contrary to Strike Point's argument (*see* Mot. 4, n.2 (citation omitted)), Plaintiff need not attach copies of the infringing works to the Complaint in order to state a claim. *See Latele Television C.A. v. Telemundo Commcn's Grp., LLC*, No. 12-22539-CIV, 2013 WL 1296314, at *7 (S.D. Fla. Mar. 27, 2013) (citations omitted).

Strike Point next asserts Plaintiff must allege when the alleged infringement occurred, as the date impacts Plaintiff's ability to recover attorney's fees and actual damages. (*See id.* 9). The Court does not agree that this fact, often not known with precision at the pleading stage,

5

must be included to state a claim of copyright infringement. *See Klein & Heuchan, Inc. v. Costar Realty Info., Inc.*, No. 8:08-cv-1227-T-30EAJ, 2009 WL 963130, at *2 (M.D. Fla. Apr. 8, 2009) (rejecting a heightened pleading standard for a copyright infringement claim on the basis that plaintiff did not allege with specificity when defendant purportedly infringed plaintiff's copyrights) (citations omitted); *Ordonez-Dawes v. Turnkey Props., Inc.*, No. 06-60557-CIV, 2007 WL 1614515, at *3 (S.D. Fla. Apr. 5, 2007) ("Unless Plaintiff [was] privy to Defendants' actions, Plaintiff would be unable to pinpoint the specific acts which transpired between Defendants and the third parties, nor the timing of those acts." (alteration added)); *cf. Home Design Servs., Inc. v. Hibiscus Homes of Fla., Inc.*, No. 603CV1860ORL19KRS, 2005 WL 3445522, at *6 (M.D. Fla. Dec. 14, 2005) (stating a copyright infringement claim requires plaintiff to plead "by what acts and during what time the defendant has infringed the copyright") (citing *Klinger v. Weekly World News*, 747 F. Supp. 1477, 1481 (S.D. Fla. 1990))).

Last, Strike Point argues "the only Strike Point products that could conceivably be at issue are three-dimensional (3-D) articles that are used for fishing[,]" but "the copyright registration is expressly for '2-D artwork'[.]" (Mot. 7). Consequently, argues Strike Point, the Complaint should be dismissed "with prejudice" as the copyrightable material is not even implicated in this case. (*See id.* 8 (citations omitted)). Strike Point expends a great deal of effort explaining the distinction between three-dimensional ("3-D") works and two-dimensional ("2-D") works, stating the former have different deposit requirements with the Copyright Office than the latter, and taking Plaintiff to task for not including with the Complaint a registration for 3-D articles. (*See id.* 7–8). This set of arguments also fails to persuade.

The Complaint's allegations make clear that it is Strike Point's applications of Plaintiff's copyrighted 2-D visual artwork to its teasers, dredge kits, and value bar dredge kits that

constitute the infringing conduct. Furthermore, as correctly noted by Stripteaser, a motion to dismiss is not the proper vehicle for challenging the validity of Stripteaser's copyright or the substance of its copyright infringement claim. (*See* Resp. 9 (citing *Magical Mile, Inc. v. Benowitz*, 510 F. Supp. 2d 1085, 1088 (S.D. Fla. 2007)). The Complaint does not make the distinction between 3-D articles and 2-D artwork, nor alleges the only products "conceivably [] at issue" are 3-D articles, as Strike Point surmises in its Motion. (Mot. 7). Accepting the factual allegations as true, as the analysis on a Rule 12(b)(6) motion demands, Count I properly pleads the two necessary elements of a direct infringement claim.

### B. Count II — Indirect Infringement

Strike Point assumes correctly that Count II states a theory of contributory infringement, as the Complaint alleges Defendant's secondary liability based on its "contribution to the infringement." (Mot. 10 (citation omitted)). Strike Point then argues Count II, alleging indirect infringement, fails to state a claim for relief as "without a direct infringement, there can be no cause of action for contributory infringement." (*Id.* 12 (citations omitted)). But the Court has just concluded a cause of action for direct infringement is sufficiently stated. Furthermore, Count II — with its allegations that Defendant has knowledge of the Ballyhoo Lure Artwork and sells products containing that artwork with knowledge its distributors are selling products containing the infringing Ballyhoo Artwork — satisfies the necessary elements for a claim of contributory copyright infringement. *See Cable/Home Comm'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990) (noting the "well-settled test for a contributory infringer" is "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another" (citations and internal quotation marks omitted)).

### C. Count III — FDUTPA

Count III states a claim of unfair competition pursuant to the FDUTPA. A plaintiff stating a claim under the FDUTPA must allege a deceptive or unfair practice, causation, and actual damages. *Sundance Apts. I, Inc. v. Gen. Elec. Capital Corp.*, 581 F. Supp. 2d 1215, 1220 (S.D. Fla. 2008) (citation omitted). Strike Point argues Count III is "devoid of any facts which support either 'fraudulent conduct' or a 'likelihood of consumer confusion[,]" as is required to state a claim under the FDUTPA. (Mot. 12 (citation omitted)). Strike Point also asserts as a "repackaged copyright infringement" claim, Count III must be dismissed as being preempted by the Copyright Act. (*Id.* 13; *see also* Reply 5–7).

Unlike its previous arguments seeking to find fault with Stripteaser's pleading, Strike Point is correct that Count III for a violation of the FDUTPA, as pleaded, is preempted by the Copyright Act, and as such must be dismissed. Count III alleges "deceptive, unfair, fraudulent" practices "that have caused a material diminution in value of Stripteaser's Ballyhoo Lure Artwork[.]" (Compl. ¶ 30). Count III alleges this conduct has misled, deceived and confused consumers, enabling Strike Point "to trade off of [Plaintiff's] reputation and good will" (*id.* ¶ 31), causing damage to Plaintiff (*see id.* ¶ 33). While employing the adjectives "deceptive," "unfair," and "fraudulent," the conduct supporting Count III is no different from the conduct supporting the two earlier counts.

A two-part test is employed in copyright preemption cases. *See Crow v. Wainwright*, 720 F.2d 1224, 1225–26 (11th Cir. 1983). Preemption by the Copyright Act occurs if the rights at issue: (1) "fall within the subject matter of copyright set forth in sections 102 and 103," and (2) "are equivalent to the exclusive rights of section 106." *Id.* (footnote call number, citation, and internal quotation marks omitted). Under the second prong, "if an extra element is required

instead of or in addition to the acts of reproduction, performance, distribution[,] or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright and there is no preemption." *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir. 2001) (citation and internal quotation marks omitted). This is known as the "extra element test." *Id.*

Stripteaser maintains the Copyright Act does not preempt the FDUTPA claim for it alleges Defendant is engaged in more than mere reproduction or display of Stripteaser's copyrighted material, thereby satisfying the "extra element test." (*See* Resp. 18–19). Brought down to its essence, Count III alleges Strike Point is engaged in conduct likely to deceive and confuse the customers of its competitor, Stripteaser, because of its direct and indirect infringement of Stripteaser's copyright. The conduct is the same, regardless what Strike Point's intent may have been. *See Marc Anthony Builders, Inc. v. Javic Props, LLC*, No. 8:11-CV-00432-EAK-AEP, 2011 WL 2709882, at *4 (M.D. Fla. July 12, 2011) ("Intent does not distinguish a claim from a copyright claim in a meaningful way."). No matter how Stripteaser attempts to describe the offending conduct in its Complaint and Response, the conduct is no different from the conduct underlying Stripteaser's copyright infringement claims. *See Pegasus Imaging Corp. v. Northrop Grumman Corp.*, No. 8:07-CV-1937-T-27EAJ, 2008 WL 5099691, at *5 (M.D. Fla. Nov. 25, 2008) ("Claims asserted pursuant to FDUTPA are not per se preempted by the Copyright Act. . . . [But] where . . . the only unfair or deceptive practice is the same conduct which forms the basis of the plaintiff's copyright claim, the FDUTPA claim is preempted." (alteration added; internal citations omitted)); *Magical Mile*, 510 F. Supp. 2d at 1089 (explaining where plaintiff's claim of unfair competition was based on defendants' trade dress infringement and not on the alleged copyright infringement, plaintiff's "federal unfair

9

competition claim contains an 'extra element' [and] is not preempted by federal copyright law . . . .'" (alteration added)). Consequently, Count III is dismissed.

## IV.   CONCLUSION

Strike Point was somewhat premature in seeking attorney's fees for having prepared what has amounted to be only a partly-successful motion to dismiss. (*See* Mot. 13–14). Strike Point would do well in the future to wait for a resolution of matters presented to the Court before seeking remedies as severe as dismissals with prejudice or fees.

Being fully advised, it is

**ORDERED AND ADJUDGED** that the Motion to Dismiss **[ECF No. 14]** is **GRANTED** in part and **DENIED** in part.

**DONE AND ORDERED** in Miami, Florida this 5th day of March, 2014.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record